E-FILED
Tuesday, 13 July, 2010  09:46:27 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BROADCAST MUSIC, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 09-1161 |
| | ) | |
| CDZ, INC. D/b/a GOODFELLAS | ) | |
| PUB & PIZZA and DENNIS J. | ) | |
| MULLEN and CRAIG J. SWOIK, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Now before the Court is Plaintiffs Broadcast Music, Inc., *et al*.'s ("BMI") Motion for Summary Judgment.  For the reasons set forth below, Plaintiffs' Motion [#24] is GRANTED.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1338(a), as the claims asserted in the Amended Complaint present federal questions under the United States Copyright Act of 1976, 17 U.S.C. § 101 *et seq*.

## BACKGROUND

Plaintiff BMI is a non-profit organization that licenses the public performances of copyrighted musical works.  A BMI license provides its recipient the ability to publicly perform the music of various songwriters, composers, and publishers in compliance with United States copyright laws.  BMI represents that it has more than 6.5 million musical works in its repertoire.

1

The other Plaintiffs are the copyright owners of the songs involved in this case.[1]  BMI has acquired non-exclusive public performance rights from each of the other named Plaintiffs. Defendants CDZ, Inc. ("CDZ"), Dennis J. Mullen ("Mullen"), and Craig J. Swoik ("Swoik") own and operate Goodfellas Pub & Pizza ("Goodfellas") in Pekin, Illinois.  Goodfellas hires local bands to perform music at its establishment.

Between March 8, 2004, and April 16, 2009, BMI sent Defendants letters explaining that Goodfellas must obtain a license in order to publicly perform the music of various songwriters, composers, and publishers at its establishment.  The letters included differing amounts of information, but they repeatedly conveyed to Defendants that Goodfellas would need to obtain a Music License from BMI in order to publicly perform BMI-represented copyrighted music.  *See, e.g.*, Plf's Motion for Summary Judgment Exh. 2, attached Exh. B (November 15, 2004 letter from BMI to Swoik).  Many of the letters included a BMI Music License for Defendants to sign and return.  Defendants did not sign a BMI Music License, and so on April 16, 2009, BMI sent Defendants a letter informing them that the matter had been forwarded to BMI's attorneys for

---

[1] The songs include Billie Jean, published by Michael Joe Jackson, d/b/a Mijac Music; Get Up I Feel Like Being a Sex Machine, published by Dynatone Publishing Company; Hard to Handle, published by Rondor Music International, Inc., d/b/a Irving Music; I Wanna Dance With Somebody Who Loves Me, published by Rondor Music International, Inc. d/b/a Irving Music, Shannon Rubicam and George Robert Merrill, a partnership d/b/a Boy Meets Girl Music; I Want You To Want Me, published by Ken Adamany, Rick Nielsen, Brad Carlson, Robin Zander and Tom Peterson, a partnership d/b/a Adult Music, and Screen Gems-EMI Music, Inc.; Jessie's Girl, published by Universal-Songs of Polygram International, Inc.; Jumpin' Jack Flash, published by Abkco Music, Inc.; Long Train Runnin', published by Warner-Tamerlane Publishing Corp.; Pirate Looks At Forty, published by Universial-Duchess Music Corporation; She's Some Kind of Wonderful, published by Dandelion Music Co., a division of Jamie Music Publishing Co.; Whiskey Bent and Hell Bound, published by Bocephus Music, Inc.; Sugar, We're Going Down, published by Sony/ATV Songs LLC and Fall Out Boy Inc. d/b/a Chicago X Softcore Songs; and Use Me, published by Interior Music Corp.

whatever action they deemed necessary.  *See* Plf's Motion for Summary Judgment, Exh. 2, attached Exh. B.

Public performances of BMI-licensed music occurred after BMI sent Goodfellas the correspondence regarding the need for a BMI Music License.  On March 26, 2008, BMI sent to Swoik a letter informing him that because he had not responded to correspondence and still did not have a licensing agreement with BMI, the letter would serve as formal notice to cease all use of BMI licensed music at Goodfellas and that continued use would result in copyright infringement.  Plf's Motion for Summary Judgment Exh. 2, attached Exh. B.  BMI authorized investigators to visit Goodfellas and make written reports about the music being publicly performed there.  On December 12, 2008, January 16, 2009, and January 17, 2009, BMI's investigators went to Goodfellas and noted the performance of songs owned by the various Plaintiffs.  The investigators completed Certified Infringement Reports.  The Reports included information about the physical establishment, whether dancing was permitted there, details about music equipment and speakers, and details about the musical performances, to the extent those details were known by the investigators.  *See* Plf's Exh. 2, attached Exh. A.  The BMI-represented copyrighted songs that bands, hired by Defendants, performed at Goodfellas on December 12, 2008, January 16, 2009, January 17, 2009, and January 18, 2009, are those that form the basis of BMI's claims of copyright infringement.  Plaintiffs allege a total of thirteen (13) separate acts of infringement.

On May 11, 2009, Plaintiffs filed their Complaint for copyright infringement, and filed their Amended Complaint changing the corporate defendant to CDZ, Inc., on June 15, 2009. Plaintiffs filed their Motion for Summary Judgment on March 24, 2010.  In addition to an order granting summary judgment, Plaintiffs seek a permanent injunction against Defendants from

3

further infringement, statutory damages for each act of infringement, Plaintiffs' costs, and their reasonable attorney's fees. The matter is fully briefed, and this Order follows.[2]

## DISCUSSION

Summary judgment should be granted where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir. 1988). If the moving party meets its burden, the burden shifts to the nonmoving party to present specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

Federal Rule of Civil Procedure 56(e) requires the nonmoving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). This Court must then determine whether there are any genuine factual issues that can properly be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. *Anderson*, 477 U.S. at 249; *Hedberg v. Indiana Bell Tel. Co., Inc.,* 47 F.3d

---

[2] In their Reply in support of their Motion for Summary Judgment, Plaintiffs request that the Court strike Defendants' second amended Responses. Plaintiffs contend that Defendants should not be permitted to file their second amended responses because they are untimely and prejudicial, and Plaintiffs are forced to respond to a moving target. Defendants filed their first and second amended responses as a result of the Court noting that they failed to comply with Local Rule 7.1(D)(2), and directing them to refile within a specific period of time. Because Defendants filed those amended responses at the direction of the Court, and within the prescribed time, the Court denies Plaintiffs' request to strike Defendant's second amended Responses and the facts provided by Plaintiffs will not be deemed admitted. Furthermore, Plaintiffs have not been prejudiced where the information that Defendants placed in separate sections in their amended responses initially appeared in the Argument section of their original Response.

928, 931 (7th Cir. 1995).  Where a party bears the burden of proof on an issue, he or she must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact requiring trial.  *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993).

## I.      Copyright Infringement

Section 106(4) of the Copyright Act provides that the owner of a copyright has the exclusive rights to do and to authorize the public performance of musical works.  17 U.S.C. § 106(4).  A plaintiff claiming copyright infringement must establish two elements: 1) ownership of a valid copyright, and 2) copying of constituent elements of the work that are original.  *Janky v. Lake County Convention and Visitors Bureau*, 576 F.3d 356, 361 (7th Cir. 2009) (citing *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).  Copying of an original work occurs when one publicly performs the work without the copyright owner's authorization.  *Janky,* 576 F.3d at 361; *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1454 (7th Cir. 1996).

Here, the first element is not at issue.  BMI included a detailed schedule of the relevant songs, including the publishers, dates of copyright registration, and the registration numbers.[3] As to copying, Defendants contend that they did not publicly perform the copyrighted songs without authorization.  Instead, Defendants argue that they did not perform nor cause specific songs to be performed because they hired local bands who alone controlled the playlists and made decisions in regard to those lists.

_____

[3] It would have been better practice for Plaintiffs to actually attach the certificates of registration for each of the thirteen musical compositions to their Complaint, rather than to just include the registration numbers.  *See., e.g., Broadcast Music, Inc. v. Niro's Palace, Inc.*, 619 F. Supp. 958, 960-61 (N.D. Ill. 1985) (first element of copyright infringement established through *prima facie* evidence of proprietorship consisting of BMI's filed registration certificates and affidavit).

Plaintiffs argue that Defendants are liable for the acts of infringement committed at Goodfellas where the unlicensed performances occurred, and that the independent contractor defense, which Defendants seem to rely upon, has long been rejected by courts.  Defendants argue that a factual issue remains as to Defendants' knowledge and notice of infringement precluding summary judgment in Plaintiffs' favor.  Defendants explain that no evidence demonstrates that they were aware that the local bands, hired as independent contractors, performed copyrighted music in violation of licensing requirements under the Copyright Act for which Defendants could be responsible.  *See* Dft's Response to Motion for Summary Judgment, p. 6.

Defendants are mistaken to assert that summary judgment in Plaintiffs' favor on the issue of copyright infringement is precluded because material questions of fact exist regarding Defendants' knowledge of the infringement committed at Goodfellas.  Defendants seem to argue that because Plaintiffs have alleged willful infringement in Paragraph 13 of their Complaint, knowledge is a necessary element that must be established before Defendants can be held liable.  Plaintiffs' allegation of willfulness goes to the question of whether it is entitled to increased damages pursuant to 17 U.S.C. § 504(c)(2), and does not place the additional requirement on them that they establish Defendants' knowledge in order to succeed on their claims of copyright infringement.  *See Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1227 (7th Cir. 1991) (explaining that evidence of notice to the alleged infringer is not necessarily an essential element, but such evidence is likely most persuasive evidence of willfulness); *and MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 931 n. 9 (2005) (citing *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304 (2d Cir. 1963) and *Dreamland Ball Room, Inc. v. Shapiro, Bernstein &*

6

*Co.*, 36 F.2d 354 (7th Cir. 1929)) (vicarious liability can be imposed "even if the defendant initially lacks knowledge of the infringement").[4]  The case law is clear that under these circumstances, Defendants may be vicariously liable for the instances of copyright infringement that occurred at Goodfellas on December 12, 2008, and January 16-18, 2009, regardless of whether they knew that copyright infringement was occurring.  *See MGM Studios, Inc.*, 545 U.S. at 931 n.9; and *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971) (discussing vicarious infringers and contributory infringers, and explaining that the former can be liable even without actual knowledge, while the latter are those who have knowledge of the infringing activity).

One can be held vicariously liable for copyright infringement where: 1) the defendant profits directly from the infringement, and 2) has a right and ability to supervise the direct infringer.  *MGM Studios, Inc.,* 545 U.S. at 931, n. 9 (2005).  Defendants argue that BMI is off the mark in attempting to establish corporate liability under the doctrine of *respondeat superior*. Defendants further argue that because no specific evidence establishes their right of supervision and control over the infringing activity, nor establishes contributory actions on their part, they cannot be vicariously liable at the summary judgment stage.

Defendants cite *Shapiro, Bernstein & Co. v. H.L. Green Co., Inc.*, and *Gershwin Publ'g Corp.* to support their contention that a factual basis sufficient to support a finding of Defendants CDZ's, Mullen's, and Swoik's liability is lacking.  In *Gershwin*, the defendant's "pervasive participation" in the programming of an association's compositions led the court to conclude that the lower court's finding of contributory infringement was amply supported.  *Gershwin Publ'g*

---

[3] The Court will later address the issue of willfulness, in connection with Plaintiffs' request for increased statutory damages in Section III.

7

*Corp.*, 443 F.2d at 1162-63 (2d Cir. 1971) (applying the Copyright Act of 1909).  The Gershwin court discussed the distinct issue of vicarious liability and held the defendant vicariously liable where it was in a position to police the infringing conduct and derived financial benefit from the primary infringers' actions.  *Id.* at 1163.  In *Shapiro*, the court concluded that the defendant was liable where the defendant entered into a license agreement with the primary infringer, retaining a right of supervision over the conduct of the primary infringer.  *Shapiro, Bernstein & Co.*, 316 F.2d at 308 (2d Cir. 1963).  In reaching its conclusion, the *Shapiro* court relied upon the "legion" of cases holding dance hall proprietors liable for copyright infringement as a result of the performance of musical compositions by bands that provided the proprietors with enhanced income.  *Id.* at 307-08 (citing cases) ("[The proprietor] is liable whether the bandleader is considered . . . an independent contractor, and whether or not the proprietor has knowledge of the compositions to be played or any control over their selection").  Here, the lack of "pervasive participation" on the part of Defendants in the hired bands' playlist selections, and lack of a license agreement between Defendants and the bands is not fatal to Plaintiffs' motion for summary judgment.

Courts elsewhere have rejected Defendants' argument that they cannot be held vicariously liable for copyright infringement where they exercised no control or supervision over their hired bands.  *See Broadcast Music, Inc. v. Peppermint Club*, 229 U.S.P.Q. 534, 538 (N.D. Ohio 1985) (immaterial whether or not the defendant exerted actual control over the musicians and their selections where he controlled, or had the right to control, the management, supervision, and operations of the venue where the musicians played); *Mob Music Publ'g v. Zanzibar on the Waterfront, LLC*, ___ F.Supp. 2d ___, 2010 WL 1170457, at *7 (D.D.C. Mar.

26, 2010) (holding that the defendants' contention that the song selection was determined by non-employee, independent contractors, did not absolve individual defendant of vicarious liability).  This Circuit has rejected an argument similar to the one that Defendants make here.

In *Dreamland Ball Room v. Shapiro, Bernstein & Co.*, the Seventh Circuit considered whether dance hall operators were liable for copyright infringement where an orchestra they hired played copyrighted music without authorization.  36 F.2d 354, 355 (7th Cir. 1929).  The operators argued that they did not direct that any musical selection be played, did not know that the orchestra played copyrighted music, and did not know that it was without authorization to play the copyrighted music.  *Id.*  They further argued that the orchestra was an independent contractor and alone was liable.  *Id.*  The Seventh Circuit rejected the independent contractor argument, and explained that the authorities were unanimous in holding dance hall owners liable under such circumstances where the playing was for the profit of the dance hall's proprietor.  *Id.*; *see also Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 157 (1975) (explaining that an entrepreneur who sponsors the performance of musicians in a public place, such as a theater or restaurant, for profit, is an infringer - direct or contributory).

Here, Defendant CDZ admits that it does own, operate, maintain, and control Goodfellas, and Defendants Mullen and Swoik admit that they are primarily responsible for the operation and management of CDZ and Goodfellas.  Defendants further admit that they hire bands to perform music at Goodfellas, and that they have a financial interest in that establishment.  Accordingly, Defendant CDZ, as owner of Goodfellas, is liable for thirteen instances of copyright infringement that occurred there as a result of hired local bands' performance of BMI-licensed music.  Furthermore, because Defendants Mullen and Swoik operate and manage

9

Goodfellas, hire local bands to perform there, and derive financial benefits from the establishment, they are vicariously liable for each of the thirteen acts of copyright infringement that occurred at Goodfellas on December 12, 2008, and January 16-18, 2009.[5]  Plaintiffs' Motion for Summary judgment is therefore granted on their thirteen claims of copyright infringement.

## II.    Statutory Damages

Under Section 504(c)(1) of the Copyright Act, a copyright owner may recover statutory damages, instead of actual damages, for "a sum of not less than $750 or more than $30,000 as the court considers just" for each infringement.  17 U.S.C. § 504.  Section 504(c)(2) provides that where the infringement is proven to have been committed willfully, the court may increase the award of statutory damages to not more than $150,000.  *Id.*  Alternatively, if the Court finds the infringement was committed by an infringer who was not aware and had no reason to believe that its acts constituted copyright infringement, the court may reduce the award of statutory damages to a sum of not less than $200.  *Id.*

Here, Plaintiffs request that the Court increase the award of statutory damages based upon Defendants' willfulness in committing the thirteen acts of copyright infringement. Plaintiffs argue that the record supports a finding that Defendants willfully and deliberately violated Plaintiffs' rights where BMI continued to inform Defendants of their need to enter into a license agreement with BMI.  Defendants strenuously assert that BMI did not provide them with specific notice or information, but rather generic, unspecific suggestions of the need for a

---

[5] In connection with its argument that there are factual issues that preclude summary judgment on Plaintiffs' claim of vicarious liability, Defendants note that the hired bands were local, not cover bands, and not orchestras playing orchestral music that has long been copyrighted.  Defendants do not explain what difference it makes that the bands were local and were not orchestras playing long-copyrighted music, nor do they cite to any cases in which such differences were material to the outcome of the case.

license.  Citing *Chi-Boy Music v. Charlie Club, Inc.*, Defendants further argue that genuine issues of fact remain as to the sufficiency and adequacy of the notice by BMI in regard to Defendants' knowledge of copyright infringement occurring at Goodfellas.  *See Chi-Boy Music*, 930 F.2d 1224 (7th Cir. 1991).  In *Chi-Boy Music*, the Seventh Circuit explained that a district court's finding of willfulness is a factual determination.  *Id.* at 1227.  The court upheld the district court's finding of willfulness where the defendant received one letter from the American Society of Composers, Authors and Publishers ("ASCAP"), another performing rights licensing organization, which specifically informed the defendant of the activity that necessitated a license, and where other evidence provided that the owner/operator deliberately ignored the obvious facts before him.  *Id.* at 1228.

Here, Defendants' reliance on *Chi-Boy Music* in attempting to defeat Plaintiffs' motion for summary judgment is misplaced, as the case actually supports a finding of willfulness under these circumstances.  The facts in the record show that BMI sent Defendants 38 letters informing them of their need to enter into license agreements between March 8, 2004, and April 16, 2009.  *See* Plf's Motion for Summary Judgment, Exh. 2, attached Exh. B.  Many times, BMI included a "blanket" license agreement which Defendants could sign and return to BMI in order to ensure compliance with U.S. copyright laws.  *See id.*  Plaintiffs also point out that a BMI representative telephoned Goodfellas on 64 occasions, and Defendant Swoik was sent a letter on March 26, 2008, informing him that he must cease unauthorized performances of BMI-licensed music.  The September 6, 2004, letter from BMI to Swoik stated in relevant part:

> [O]ur office has a long history of repeated contact with you regarding the
> necessity of signing a BMI Music License.  In correspondence directed to
> you on numerous occasions, the need for such a license was clearly stated
> and every effort has been made to resolve the matter amicably, but without
> success.

11

Plf's Motion for Summary Judgment, Exh. 2, attached Exh. B.  On October 25, 2004, BMI wrote Defendant Swoik: "In correspondence and phone calls directed to you on numerous occasions, the need for . . . a [BMI Music] License was clearly stated."  *Id.*  In late 2008 and early 2009, after BMI sent the letters and made the phone calls, BMI investigators noted the performance of the thirteen songs at issue here at the Goodfellas establishment.  Plf's Motion for Summary Judgment, Exh. 2, attached Exh. A.  Defendants do not create a genuine issue of material fact as to willfulness by pointing to the affidavits of Swoik and Mullen, nor by pointing to the March 26, 2008, letter from BMI to Defendant Swoik.[6]

In the course of five years, BMI notified Defendants of their need to obtain a BMI Music License,[7] that public performance of BMI-affiliated music without proper authorization would result in copyright infringement,[8] and that infringement of BMI-licensed music occurred at Goodfellas.[9]  Defendants do not make the argument that they in any way attempted to determine what the conduct was that constituted violations of the Copyright Act.  Significantly, in their affidavits, Defendants Mullen and Swoik state that "nothing in the material forwarded to them by BMI indicated that local bands playing copyrighted songs as alleged in the complaint constituted violations of the copyright act as they know and understand it."

---

[6] The letter notified Swoik that it served as formal notice that Goodfellas must cease all use of BMI licensed music at the establishment, and that continued use of music in BMI's repertoire without authorization would result in copyright infringement.

[7] *See* Plf's Motion for Summary Judgment, Exh. 2, attached Exh. B, September 6, 2004, letter to Defendant Swoik.

[8] *See* Plf's Motion for Summary Judgment, Exh. 2, attached Exh. B, November 25, 2004, letter to Defendant Swoik.

[9] *See* Plf's Motion for Summary Judgment, Exh. 2, attached Exh. B, March 19, 2009, letters to Defendants Mullen and Swoik.

So while they allege they were not aware of what specific conduct occurring at Goodfellas amounted to copyright infringement, they certainly were on notice that infringement was occurring at their establishment and did not attempt to correct it. There is evidence in the record that Defendants did, at certain times, make inquiries to BMI regarding the license they were sent to sign, and that Defendants held a license with ASCAP at some point.[10] Such things show that Defendants were certainly on notice of their need to obtain a license to prevent copyright infringement at their establishment. Therefore, no genuine issue of fact remains as to the sufficiency and adequacy of the notice provided by BMI to Defendants in this case. Defendants cannot defeat a motion for summary judgment on the question of willfulness where the record amply shows that they were deliberately naive as to what activities at Goodfellas amounted to copyright infringement. They had been sent letters in which BMI repeatedly notified them of the need for a license, were sent cease and desist orders, and still did not sign any BMI license agreements. Accordingly, the Court finds that Defendants acted willfully in violating Plaintiffs' rights.

Plaintiffs seek a total statutory award of $52,000, or $4,000 per infringement, for the thirteen separate acts of infringement identified in this case. The affidavit of Lawrence E. Stevens, Assistant Vice-President, General Licensing for BMI, provides that had the Defendants entered into an agreement at the time BMI first contacted them in March, 2004, the estimated

---

[10] In a March 19, 2008, letter to Defendant Mullen, BMI's Director of General Licensing noted that Mullen was questioning the need for a BMI Music License. In another March 19, 2008, letter, the Director of General Licensing at BMI thanked Mullen for his request for a list of BMI musical works. In the July 17, 2008, letters to Mullen and Swoik, the Senior Director of General Licensing noted that she was made aware of their inquiry to BMI regarding the definition of "occupancy" as defined in the BMI Music License Agreement. *See* Plf's Motion for Summary Judgment, Exh. 2, attached Exh. B.

13

total lost license fees would have been $37,147.50 between March, 2004, and February, 2010. Plaintiffs note that the $52,000 figure is less than one and one-half times the license fees that Defendants would have paid had they been properly licensed. The statutory award Plaintiffs seek is within the range other courts have granted within this circuit. *See Broadcast Music, Inc. v. Star Amusements, Inc.*, 44 F.3d 485, 488, 489 (7th Cir. 1995) (upholding the statutory award of nearly two times what the copyright registration fees would have been); *Canopy Music Inc. v. Harbor Cities Broadcasting, Inc.*, 950 F. Supp. 913, 917 (E.D. Wis. 1997) (statutory award of $4,000 for each of ten willful infringements reasonable where the $40,000 total award was less than twice the amount of $22,969.76 defendant would have otherwise paid in licensing fees); *Chi-Boy Music*, 930 F.2d at 1229 (upholding district court's grant of statutory award for willful infringement that was approximately three times the amount due under past license agreements). The Court finds an award of $4,000 for each of the thirteen infringements in this case, or $52,000 in total, reasonable as the award is well within the statutory range, Defendants would have otherwise had to pay $37,147.50 in licensing fees to BMI, and Defendants acted willfully. *See F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 233 (1952) (explaining that the statutory rule providing for recovery of damages restores profit to the copyright owner, compensates for the injury suffered as a result of the infringement, and is designed to discourage wrongful conduct).

## III.    Attorney's Fees and Costs

Plaintiffs finally request attorney's fees and costs pursuant to Section 505 of the Copyright Act. Section 505 provides that the "court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. Attorney's fees may be awarded in order to encourage the assertion of colorable copyright claims, to deter infringement, and to

14

make the plaintiff whole.  *Roulo v. Russ Berrie & Co., Inc.*, 886 F.2d 931, 942 (7th Cir. 1989).

A finding of willfulness will support an award of attorney's fees, but such a finding is not a

prerequisite.  *Id.* at 942; *Chi-Boy Music*, 930 F.2d at 1230.  Here, Plaintiffs are entitled to their

reasonable attorney's fees and costs in litigating this case.  They brought a colorable copyright

claim against Defendants following five years of attempts to have Defendants enter into BMI

Music License agreements so that Defendants would be in compliance with U.S. copyright laws.

After continuous notices to Defendants failed to secure a license from BMI, Plaintiffs filed the

instant lawsuit.  An award of attorney's fees and costs is appropriate in order to deter any further

infringement on the part of Defendants, particularly because they have engaged in willful

infringement.  The Court grants Plaintiffs their reasonable attorney fees, which will be

specifically determined once Plaintiffs' counsel submits an affidavit setting forth the attorney's

fees and costs billed in this case.  Plaintiffs' counsel must do so within 14 days of the date of this

Order.

## IV.    Injunctive Relief

Plaintiffs request permanent injunctive relief against Defendants pursuant to 17 U.S.C.

§ 502(a).  Section 502(a) provides that "Any court having jurisdiction of a civil action arising

under this title may . . . grant temporary and final injunctions on such terms as it may deem

reasonable to prevent or restrain infringement of a copyright.  17 U.S.C. § 502(a).  In

considering whether to grant permanent injunctive relief, the Court must consider:  1) whether

the plaintiff has suffered or will suffer an irreparable injury, 2) whether there are inadequate

remedies at law available to compensate for the injury, 3) the balance of hardships, and 4) the

public interest.  *Sierra Club v. Franklin County Power of Ill., LLC*, 546 F.3d 918, 935 (7th Cir.

2008).

15

In considering all the factors, the Court finds that a permanent injunction is appropriate under these circumstances and is therefore granted.  Specifically, the remedies at law may not be adequate if Plaintiffs are forced to continually monitor Goodfellas and litigate further infringements.  The hardship to Defendants in obtaining a BMI license is not great, as it appears that they have previously obtained a license from ASCAP, and have been provided numerous copies of the BMI license agreement for them to sign and return to BMI.  On the other hand, BMI will likely have to spend more time and money to monitor the Goodfellas establishment to ensure that Defendants do not continue to vicariously infringe BMI-licensed musical compositions.  Also, given the evidence in the record of Defendants' reluctance in obtaining a BMI license, there is a threat of continuing infringement, and so permanent injunctive relief is warranted here.  *See Broadcast Music, Inc. v. Niro's Palace*, 619 F. Supp. 958, 963 (N.D. Ill. 1985) ("A permanent injunction is especially appropriate where a threat of continuing infringement exists.")

## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment against Defendants CDZ, Inc., Dennis J. Mullen, Craig J. Swoik, each individually, is GRANTED, and:

1.    Plaintiffs shall recover from Defendants CDZ, Inc., Dennis J. Mullen, and Craig J. Swoik, each individually, jointly and severally, statutory damages in the amount of four thousand dollars ($4,000.00) for each of the thirteen (13) musical compositions, for a total of fifty-two thousand dollars ($52,000.00), pursuant to 17 U.S.C. § 504(c)(1).

2.    Plaintiffs shall recover from Defendants CDZ, Inc., Dennis J. Mullen, and Craig J. Swoik, each individually, jointly and severally, full costs in this action,

16

including reasonable attorney's fees, pursuant to 17 U.S.C. § 505, to be determined by the Court once Plaintiffs' counsel submits an affidavit setting forth the attorney's fees and costs billed in this case.  Plaintiffs' counsel must do so within 14 days of the date of this Order.

3.    Plaintiffs shall recover from Defendants CDZ, Inc., Dennis J. Mullen, and Craig J. Swoik, each individually, jointly and severally, post-judgment interest on the full amount of this judgment, pursuant to 28 U.S.C. § 1961.

4.    Defendants CDZ, Inc., Dennis J. Mullen, and Craig J. Swoik, each individually and their agents, servants, employees, and all persons acting under their permission or authority shall be permanently enjoined and restrained from infringing, in any manner, the copyrighted musical compositions licensed by Broadcast Music, Inc.

5.    This Court shall retain jurisdiction over this action for the purpose of enforcing the judgment granted.

ENTERED this 13th day of July, 2010.

s/Michael M. Mihm
Michael M. Mihm
United States District Judge